## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
## WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 11-00223-11-CR-W-BCW |
| | ) | |
| KAREN OLSON, | ) | |
| | ) | |
| Defendant. | ) | |

## PLEA AGREEMENT

Pursuant to Rule 11(c)(1)(B) of the Federal Rules of Criminal Procedure, the parties described below have entered into the following plea agreement:

1.    **The Parties.**  The parties to this agreement are the United States Attorney's Office for the Western District of Missouri (otherwise referred to as "the Government" or "the United States"), represented by David M. Ketchmark, Acting United States Attorney, and Daniel M. Nelson, Assistant United States Attorney, and the defendant, Karen Olson ("the defendant"), represented by P.J. O'Connor.  The defendant understands and agrees that this plea agreement is only between her and the United States Attorney for the Western District of Missouri, and that it does not bind any other federal, state, or local prosecution authority or any other government agency, unless otherwise specified in this agreement.

2.    **Defendant's Guilty Plea.**  The defendant agrees to and hereby does plead guilty to Count One of the Indictment charging her with a violation of 18 U.S.C. § 286, that is, conspiracy to defraud the United States.  By entering into this plea agreement, the defendant admits that she knowingly committed this offense, and is in fact guilty of this offense.

3.    **Factual Basis for Guilty Plea.**  The parties agree that the facts constituting the offense to which she is pleading guilty are as follows:

Karen **Olson**, of Wood Dale, Illinois, graduated from Wayne Community College in Goldsboro, North Carolina around 1990 with an Associate's Degree in Accounting.  **Olson** worked at Fast Tax in Goldsboro for one or two years.  She also did taxes for people on the Air Force base where her husband Jeffrey was deployed while serving in the military.  **Olson** estimates she assisted 10 to 15 individuals with their tax returns while at the Air Force Base and too many to count while working at Fast Tax.  On October 13, 2008, the **Olsons** submitted a 2007 joint income tax return, including fraudulent Forms 1099-OID, which was processed through the Kansas City, Missouri, IRS Service Center, in the Western District of Missouri.  They received a refund of $171,806, which was deposited in the **Olsons**' joint bank account.  In actuality, the **Olsons** had never accrued any OID income from the banks and lenders listed on their Forms 1099-OID, nor had those entities issued the forms, nor had they paid any taxes on the **Olsons**' behalf.  With the proceeds, Karen **Olson** admits they purchased an Acura MDX from Napleton Imports for about $43,000.  They also lent money to friends, paid bills, and paid off a timeshare in Branson, Missouri for approximately $12,000.

In December 2008, Karen and Jeffrey **Olson** met Gerald Poynter, also known as "Brother Jerry Love," at a seminar in Iowa sponsored by Pastor Toni King.  Poynter works and resides in the Western District of Missouri.  **Olson** was concerned because she was aware of people receiving IRS letters questioning the legitimacy of their tax returns.  After discussing their tax return with Poynter, Poynter stated that they had properly prepared their tax return using the 1099-OID process.  Subsequently, **Olson** was in contact via Skype with Poynter from January 2009 through April 16, 2009.  After that date, **Olson** received a call from Poynter that a search

Case 4:11-cr-00223-BCW   Document 229   Filed 08/07/12   Page 2 of 23

warrant was executed on his business location and IRS investigators were asking witnesses about Jeff and Karen **Olson**.

Karen **Olson** became aware of additional "red flags" concerning the OID process, including through receiving multiple notices from the IRS that the filings were frivolous. Although she wasn't "sure" about the legality of the process, and she knew that something was "not right," Karen **Olson** never called the IRS to inquire. Likewise, she did not consult a tax attorney, CPA or legitimate tax preparer to get the facts. After receiving a letter from IRS advising their 2007 tax return did not match IRS records, the **Olsons** decided to assert that their original filing was accurate. They amended an affidavit they obtained from the internet and sent it into the IRS. On March 16, 2009, Karen **Olson** also read an article concerning a fraud alert for 1099-OID filings posted in the IRS's newsroom section of its website. However, she continued to participate in the OID scheme.

People around the **Olsons** knew they had received a large refund from the process and began asking them for their help. They decided to charge $200 per person or couple to transmit their Forms 1099-OID and 1099-A through their tax preparation and submission company, FATR, LLC. In order to enhance the returns, they also decided to obtain a TCC number so they could begin uploading electronic 1099-OID and 1099-A documents for clients. In order to file information returns on the IRS FIRE system, an entity must obtain a TCC (Transmitter Control Code) number. In early 2009, the **Olsons** requested and obtained a TCC number, using an IRS Form 4419 (Application for Filing Information Returns Electronically). To obtain a TCC number, the user must list an email address. That email address then receives notices whenever returns are filed with the IRS using the TCC number. The **Olsons** then used the FIRE system in

order to transmit Forms 1099 using this TCC number.  Karen **Olson** and Gerald Poynter specifically referenced FATR, LLC in Skype messages.

Once the **Olsons** obtained the TCC number, Jeff Olson asked Karen to send it to Poynter. Via Skype, Karen **Olson** taught Gerald Poynter how to use the software associated with 1099 FIRE.  On February 16, 2009, the **Olsons** provided their TCC number to Poynter for him to use in filing Forms 1099-OID for other clients.  Skype messages show that the **Olsons** and Poynter discussed the use of the TCC number and volume of 1099-OIDs and 1099-As that can be transmitted.  Karen **Olson** responded that the number would be "OK."  Poynter used the advice and instruction provided by the **Olsons** to file fraudulent claims in excess of $89 million. Because Poynter used the **Olsons**' TCC number, when Poynter made these filings, the **Olsons** received notifications from the Internal Revenue Service that the forms appeared fraudulent. Karen **Olson** requested paperwork from Poynter "in the event anything happens [to show] that we had authorization to transmit."  On March 16, 2009, **Olson** sent a copy of one of the FIRE emails advising of the excessive withholdings to Poynter.  **Olson** recalled that Poynter responded with the statement "I like opinions."

When interviewed, Karen **Olson** admitted to agents that she was aware that Poynter's clients and others received refunds associated with OID returns.  At first, she denied any knowledge of the email address helptrust@inbox.com.  Later, she said that she thought it was an old email address of the **Olsons**.

Using debt information including bank statements, credit card statements, mortgage payments, and checking account "flow," Karen estimated that the **Olsons** assisted approximately 10 individuals/couples in preparing their Forms 1040 using the 1099-OID process.  They assisted

-4-

approximately 20 to 25 individuals/couples to electronically transmit Forms 1099-OID using one of their TCC numbers.

Four returns that were based on fraudulent Forms 1099-OID claimed refunds totaling $825,907.12. Refunds totaling $408,693 were issued. **Olson**'s neighbors, J.S. and C.S., were interviewed. They said that Karen **Olson** told them that she doesn't sign returns, because in the event there is a problem with the IRS, you are responsible for the returns. On March 16, 2009, Karen **Olson** forwarded to Poynter the notice from the IRS concerning excessive withholding and an article concerning a fraud alert for 1099-OID filings. Subsequently, Karen **Olson** filed an additional return for J.S. and C.S., based on fraudulent Forms 1099-OID, requesting a refund of $227,563 for tax year 2008. Karen **Olson** also prepared a 2008 individual return for J.E., who received his refund of $236,867, and paid $21,986 to the **Olsons** in the form of a cashier's check to The Griffen Trust, of which Karen **Olson** is a trustee. From February 1, 2010, through May 15, 2010, Karen **Olson** wrote checks from The Griffen Trust to the Help Trust totaling $23,884.67. Although Karen **Olson** prepared them, all of the returns prepared for J.S., C.S., and J.E. were filed as self-prepared. The **Olsons** also received money for their services from J.E.'s sisters and brothers. Each of the family members sent the **Olsons** approximately $1,000 after they received their refunds.

In sum, the total amount of return directly connected to Karen **Olson** are as follows:

| Tax Year | Name(s) on Return | Amount Requested | Refund Issued? |
|----------|-------------------|------------------|----------------|
| 2007 | Jeffrey and Karen Olson | $171,806 | Yes |
| 2005 | J.S. and C.S. | $191,684.12 | No |
| 2008 | J.S. and C.S. | $227,563 | No |
| 2008 | J.E. | $234,854 | Yes |

| | TOTAL | $825,907.12 | |
|---|---|---|---|

Karen **Olson** stated that her and her husband were both equally involved in the 1099-OID process and knew most of what each other was doing and discussed developments daily with one another. Karen **Olson** admitted that "at the beginning, most of the uploading was me." But Jeff Olson was aware of most communications and daily activities related to the 1099-OID process and their clients, including the IRS fraud alerts. Karen **Olson** communicated with Jeff on a daily basis and, even with their marital challenges, did not hold anything back from Jeff when it came to the 1099-OID process. In addition, Jeff uploaded at least a few Forms 1099 using FIRE (other than his own) and a higher volume with CRTU.

Karen **Olson** knew Darryl Larkins from Chicago. She has seen him on 10 to 15 occasions. Jeff Olson met Larkins through his National Non-Profit Network which was some sort of multi-level marketing program. **Olson** met Larkins once for about 10 minutes. **Olson** always called him "Darryl" and Larkins never corrected her or asked her to call him in any other way. Larkins was familiar with the 1099-OID process.

By entering into this plea agreement, the defendant agrees that she, her husband, nor her clients received any 1099 or OID Forms issued to her from any financial institutions, that they in fact received no such qualifying income, and that the aforementioned facts are true and correct. Further, she specifically consents to venue in the Western District of Missouri.

    **4.**    **Use of Factual Admissions and Relevant Conduct.** The defendant acknowledges, understands and agrees that the admissions contained in Paragraph 3 and other portions of this plea agreement will be used for the purpose of determining her guilt and advisory

sentencing range under the United States Sentencing Guidelines ("U.S.S.G."), including the calculation of the defendant's offense level in accordance with U.S.S.G. § 1B1.3(a)(2).  The defendant acknowledges, understands and agrees that the conduct charged in any dismissed counts of the Indictment as well as all other uncharged related criminal activity may be considered as "relevant conduct" pursuant to U.S.S.G. § 1B1.3(a)(2) in calculating the offense level for the charge to which she is pleading guilty.

5.    **Statutory Penalties.**  The defendant understands that upon her plea of guilty to Count One of the Indictment charging her with conspiracy to file a false claim for a tax refund, the maximum penalty the Court may impose is not more than ten years of imprisonment, a $250,000 fine, three years of supervised release, an order of restitution and a $100 mandatory special assessment per felony count of conviction which must be paid in full at the time of sentencing.  The defendant further understands that this offense is a Class C felony.

6.    **Sentencing Procedures.**  The defendant acknowledges, understands and agrees to the following:

a.  in determining the appropriate sentence, the Court will consult and consider the United States Sentencing Guidelines promulgated by the United States Sentencing Commission; these Guidelines, however, are advisory in nature, and the Court may impose a sentence either less than or greater than the defendant's applicable Guidelines range, unless the sentence imposed is "unreasonable";

b.  the Court will determine the defendant's applicable Sentencing Guidelines range at the time of sentencing;

c.  in addition to a sentence of imprisonment, the Court may impose a term of supervised release of up to 3 years; that the Court must impose a period of supervised release if a sentence of imprisonment of more than one year is imposed;

-7-

d.  if the defendant violates a condition of her supervised release, the Court may revoke her supervised release and impose an additional period of imprisonment of up to 2 years without credit for time previously spent on supervised release.  In addition to a new term of imprisonment, the Court also may impose a new period of supervised release, the length of which cannot exceed 3 years, less the term of imprisonment imposed upon revocation of the defendant's first supervised release;

e.  the Court may impose any sentence authorized by law, including a sentence that is outside of, or departs from, the applicable Sentencing Guidelines range;

f.  any sentence of imprisonment imposed by the Court will not allow for parole;

g.  the Court is not bound by any recommendation regarding the sentence to be imposed or by any calculation or estimation of the Sentencing Guidelines range offered by the parties or the United States Probation Office;

h.  the defendant may not withdraw her guilty plea solely because of the nature or length of the sentence imposed by the Court;

i.  The defendant agrees that the United States may institute civil, judicial or administrative forfeiture proceedings against all forfeitable assets in which the defendant has an interest, and that she will not contest any such forfeiture proceedings;

j.  The defendant agrees to forfeit all interests she owns or over which she exercises control, directly or indirectly, in any asset that is subject to forfeiture to the United States either directly or as a substitute for property that was subject to forfeiture but is no longer available for the reasons set forth in 21 U.S.C. § 853(p). With respect to any asset which the defendant has agreed to forfeit, the defendant waives any constitutional and statutory challenges in any manner (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this plea agreement on any grounds, including that the forfeiture constitutes an excessive fine or punishment under the Eighth Amendment to the United States Constitution;

k.  The defendant agrees to fully and truthfully disclose the existence, nature and location of all assets forfeitable to the United States, either directly or as a substitute asset, in which she and her co-conspirators have or had any direct or indirect financial interest, or exercise or exercised control, directly or indirectly, during the period from 2007 to the present.  The defendant also agrees to fully and

completely assist the United States in the recovery and forfeiture of all such forfeitable assets;

l.  The defendant agrees to take all necessary steps to comply with the forfeiture matters set forth herein before her sentencing;

m.  Within 10 days of the execution of this plea agreement, at the request of the USAO, the defendant agrees to execute and submit (1) a Tax Information Authorization form; (2) an Authorization to Release Information; (3) a completed financial disclosure statement; and (4) copies of financial information that the defendant submits to the U.S. Probation Office.  The defendant understands that the United States will use the financial information when making its recommendation to the Court regarding the defendant's acceptance of responsibility; and

n.  At the request of the USAO, the defendant agrees to undergo any polygraph examination the United States might choose to administer concerning the identification and recovery of forfeitable assets and restitution.

7.  **Preparation of Presentence Report.**  The defendant understands the United States will provide to the Court and the United States Probation Office a government version of the offense conduct.  This may include information concerning the background, character, and conduct of the defendant, including the entirety of her criminal activities.  The defendant understands these disclosures are not limited to the count to which she has pleaded guilty.  The United States may respond to comments made or positions taken by the defendant or the defendant's counsel and to correct any misstatements or inaccuracies.  The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject only to any limitations set forth in this plea agreement.  The United States and the defendant expressly reserve the right to speak to the Court at the time of sentencing pursuant to Rule 32(i)(4) of the Federal Rules of Criminal Procedure.

Case 4:11-cr-00223-BCW   Document 229   Filed 08/07/12   Page 9 of 23

8.      **Government's Agreements.**  Based upon evidence in its possession at this time, the United States Attorney's Office for the Western District of Missouri, as part of this plea agreement, agrees not to bring any additional charges against defendant for any federal criminal offenses related to conspiracy to defraud the Government with respect to the 1099-OID fraudulent tax refund scheme for which it has venue and which arose out of the defendant's conduct described above.  In addition, the government agrees to move to dismiss Counts 41, 42 and 43 at sentencing.

The defendant understands that this plea agreement does not foreclose any prosecution for an act of murder or attempted murder, an act or attempted act of physical or sexual violence against the person of another, or a conspiracy to commit any such acts of violence or any criminal activity of which the United States Attorney for the Western District of Missouri has no knowledge.

The defendant recognizes that the United States' agreement to forego prosecution of all of the criminal offenses with which the defendant might be charged is based solely on the promises made by the defendant in this agreement.  If the defendant breaches this plea agreement, the United States retains the right to proceed with the original charges and any other criminal violations established by the evidence.  The defendant expressly waives her right to challenge the initiation of the dismissed or additional charges against her if she breaches this agreement.  The defendant expressly waives her right to assert a statute of limitations defense if the dismissed or additional charges are initiated against her following a breach of this agreement.  The defendant further understands and agrees that if the Government elects to file additional charges against her following her breach of this plea agreement, she will not be allowed to withdraw her guilty plea.

-10-

to any prosecution which is not barred by the statute of limitations on the date this Plea Agreement is signed by the defendant.

9. **Cooperation.** Defendant agrees to cooperate fully and truthfully with law enforcement agents investigating criminal activity in the Western District of Missouri and elsewhere. That cooperation includes providing full, complete, and honest statements regarding her knowledge of such activity; actively cooperating in corroborating the information she provides; and testifying fully and truthfully if called as a witness before any Grand Jury, any trial, or any other related proceeding. In particular, the defendant agrees:

      a. to provide truthful, complete, and accurate information and testimony in the trial of this matter or in any related hearing;

      b. to provide all information concerning her knowledge of, and participation in, the offenses charged in the Information, and any other crimes about which she has knowledge;

      c. to submit to a polygraph examination if requested to do so by counsel for the United States;

      d. she will not falsely implicate any person or entity and will not protect any person or entity through false or misleading information or omission and that all information she provides will be truthful, complete, and accurate;

      e. to testify as a witness before any grand jury, hearing, or trial when requested to do so by the United States;

      f. to hold herself reasonably available for any interviews the United States may require. Defendant waives any right to the presence of counsel at such meetings, debriefings, or pretrial preparation sessions. The parties agree that no prior consultation with defendant's attorney shall be necessary to conduct these meetings, debriefings or interviews, unless defendant's attorney specifically requests such notice;

      g. to provide the United States with all documents or other items under her control which may pertain to any criminal violation;

-11-

h. to cooperate with any local, state, and federal law enforcement agency as requested by counsel for the United States; and

i. to continue her cooperation after the time she is sentenced if requested to do so by the United States. Failure to continue to cooperate after sentence is imposed constitutes a basis to void this agreement by the United States and will allow the Government to pursue any remedy for defendant's breach including, by way of illustration and not by way of limitation, re-instituting charges that are dismissed pursuant to this agreement.

Defendant understands that the United States will tolerate no deception from her. If, in the good faith estimation of the United States, defendant's information or testimony proves to be untruthful or incomplete in any way, regardless of whether the untruthfulness helps or hurts the United States' case, defendant will have breached this Plea Agreement. In the event defendant breaches the Plea Agreement, the United States will no longer be bound by, and may withdraw from, the Plea Agreement and take defendant to trial on any charges of which the United States is aware. Defendant agrees that if the United States in good faith determines that she has not provided full and truthful cooperation, or has committed any local, state, or federal crime between the date of this Plea Agreement and her sentencing, or has otherwise violated any other provision of this Plea Agreement, or has violated the terms and conditions of her release while on bond as required by the Court, the United States will be relieved of its obligations under this Plea Agreement, the defendant's previously entered plea of guilty shall remain in effect and cannot be withdrawn, and the defendant shall be subject to prosecution for any federal crime of which the United States has knowledge including, but not limited to, perjury, obstruction of justice, and any substantive offenses arising from this investigation. Such prosecution may be based upon any information provided by the defendant during the course of her cooperation, or upon leads derived therefrom, and this information may be used as evidence against her. Further, any

-12-

prosecution which is not barred by the applicable statute of limitations on the date of the signing

of this Plea Agreement may be commenced against the defendant in accordance with this

Plea Agreement, notwithstanding the expiration of the statute of limitations between the time of

signing this agreement and the commencement of the prosecution.  It is the specific intent of this

Plea Agreement to waive any and all defenses based upon the statute of limitations with respect

to any prosecution which is not barred by the statute of limitations on the date this Plea

Agreement is signed by the defendant.

   **10.** **Substantial Assistance.**  The United States agrees to advise the Court in writing

before imposition of judgment and sentence of the nature and extent of defendant's cooperation.

The United States represents to the defendant that it will consider filing a motion for a downward

departure pursuant to § 5K1.1 of the Sentencing Guidelines if, in its sole judgment, the defendant

has provided substantial assistance in the investigation and prosecution of other persons who

have committed criminal offenses.  Defendant expressly acknowledges, however, that there has

been no assurance that such a motion will be filed.  The United States reserves the right to make

the sole determination as to whether and when the defendant has provided substantial assistance.

Defendant further understands and agrees that the decision of whether to depart from the

sentencing guideline range pursuant to § 5K1.1, and to what extent, is a matter committed solely

to the discretion of the Court.  If the Court determines not to depart downward, the defendant

shall not be permitted to withdraw her guilty plea solely for that reason.  Defendant understands

and agrees that if defendant commits a local, state or federal crime (whether a felony or

misdemeanor) or violates any conditions of defendant's bond while she is cooperating with the

Case 4:11-cr-00223-BCW   Document 229   Filed 08/07/12   Page 13 of 23

United States, a motion for downward departure will not be filed by the Government on defendant's behalf.

11. **Cooperation Stipulations.** In exchange for the defendant's agreement to cooperate with the United States, the United States agrees not to use new information that the defendant might provide about defendant's own criminal conduct except as specifically authorized by § 1B1.8 of the United States Sentencing Guidelines. As such, this information may be revealed to the Court but may not be used against the defendant in determining the defendant's applicable Guidelines range or departing above the Guidelines range. Defendant understands and agrees, however, that under U.S.S.G. § 1B1.8, there shall be no such restrictions on the use of such information: (1) if it was previously known to the United States; (2) if it was revealed to the United States by, or discoverable through, an independent source; (3) in a prosecution of defendant for perjury or giving a false statement; (4) in the event there is a breach of this agreement; or (5) in determining whether and to what extent a downward departure is warranted as a result of a Government motion pursuant to U.S.S.G. § 5K1.1.

12. **Withdrawal of Plea.** Either party reserves the right to withdraw from this plea agreement for any or no reason at any time prior to the entry of the defendant's plea of guilty and its formal acceptance by the Court. In the event of such withdrawal, the parties will be restored to their pre-plea agreement positions to the fullest extent possible. However, after the plea has been formally accepted by the Court, the defendant may withdraw her plea of guilty only if the Court rejects the plea agreement or if the defendant can show a fair and just reason for requesting the withdrawal. The defendant understands that if the Court accepts her plea of guilty and this plea agreement but subsequently imposes a sentence that is outside the defendant's applicable

-14-

Sentencing Guidelines range, or imposes a sentence that the defendant does not expect, like or agree with, she will not be permitted to withdraw her plea of guilty.

13.    **Agreed Guidelines Applications.**  With respect to the application of the Sentencing Guidelines to this case, the parties stipulate and agree as follows:

a.  The Sentencing Guidelines do not bind the Court and are advisory in nature.  The Court may impose a sentence that is either above or below the defendant's applicable Guidelines range, provided the sentence imposed is not "unreasonable."

b.  The applicable Guidelines Manual is the one that took effect on November 1, 2011.

c.  The applicable Guidelines section for the offense of conviction is U.S.S.G. § 2B1.1, which provides for a base offense level of 6.

d.  The parties agree that defendant **Olson** is subject to a 14-level enhancement because the attempted amount of loss directly attributable to her conduct was greater than $400,000 but less than $1 million.

e.  The parties agree to leave open the issue of whether a 2-level enhancement is applicable for sophisticated means under U.S.S.G. § 2B1.1(b)(9).

f.  The defendant does not qualify for any reductions other than acceptance of responsibility.

g.   The defendant has admitted her guilt and clearly accepted responsibility for her actions, and has assisted authorities in the investigation or prosecution of her own misconduct by timely notifying authorities of her intention to enter a plea of guilty, thereby permitting the Government to avoid preparing for trial and permitting the Government and the Court to allocate their resources efficiently.  Therefore, she is entitled to a 3-level reduction pursuant to § 3E1.1(b) of the Sentencing Guidelines.  The Government, at the time of sentencing, will file a written motion with the Court to that effect, unless the defendant (1) fails to abide by all of the terms and conditions of this plea agreement and her pretrial release; or (2) attempts to withdraw her guilty plea, violates the law, or otherwise engages in conduct inconsistent with her acceptance of responsibility.

h.  There is no agreement between the parties regarding the defendant's criminal history category.  The parties agree that the Court will determine her

-15-

applicable criminal history category after receipt of the presentence investigation report prepared by the United States Probation Office.

     i.  The defendant understands that the estimate of the parties with respect to the Guidelines computation set forth in the subsections of this paragraph does not bind the Court or the United States Probation Office with respect to the appropriate Guidelines levels.  Additionally, the failure of the Court to accept these stipulations will not, as outlined in Paragraph 12 of this plea agreement, provide the defendant with a basis to withdraw her plea of guilty.

     j.  The defendant consents to judicial fact-finding by a preponderance of the evidence for all issues pertaining to the determination of the defendant's sentence, including the determination of any mandatory minimum sentence (including the facts that support any specific offense characteristic or other enhancement or adjustment), and any legally authorized increase above the normal statutory maximum.  The defendant waives any right to a jury determination beyond a reasonable doubt of all facts used to determine and enhance the sentence imposed, and waives any right to have those facts alleged in the Indictment.  The defendant also agrees that the Court, in finding the facts relevant to the imposition of sentence, may consider any reliable information, including hearsay.

     k.  The defendant understands and agrees that the factual admissions contained in Paragraph 3 of this plea agreement, and any admissions that she will make during her plea colloquy, support the imposition of the agreed-upon Guidelines calculations contained in this agreement.

     l.  The United States agrees not to seek an upward departure from the Guidelines or a variance above the Guidelines range.  Other than a reduction based on substantial assistance, the defendant agrees that she will not seek a downward departure from the Guidelines, or a variance below the Guidelines range.  The agreement not to seek a departure from the Guidelines or non-Guidelines sentence is not binding upon the Court or the United States Probation Office and the Court may impose any sentence authorized by law, including any sentence outside the applicable Guidelines range that is not "unreasonable."

     m.  The parties expressly acknowledge that other enhancements or reductions in the defendant's offense level may be applicable and reserve the right to argue for such enhancements or reductions, as set forth in paragraph 14.

**14.**    **Effect of Non-Agreement on Guidelines Applications.**  The parties understand, acknowledge and agree that there are no agreements between the parties with respect to any

-16-

Sentencing Guidelines issues other than those specifically listed in Paragraph 13, and its subsections. As to any other Guidelines issues, the parties are free to advocate their respective positions at the sentencing hearing.

15. **Change in Guidelines Prior to Sentencing.** The defendant agrees that if any applicable provision of the Guidelines changes after the execution of this plea agreement, then any request by defendant to be sentenced pursuant to the new Guidelines will make this plea agreement voidable by the United States at its option. If the Government exercises its option to void the plea agreement, the United States may charge, reinstate, or otherwise pursue any and all criminal charges that could have been brought but for this plea agreement.

16. **Financial Obligations.** By entering into this plea agreement, the defendant represents that she understands and agrees to the following financial obligations:

      a. The Court must order restitution to the victims of the offense to which the defendant is pleading guilty, including remuneration to the government of all funds she obtained in the course of this scheme, plus applicable penalties. The defendant agrees that the Court may order restitution in connection with the conduct charged in any counts of the Indictment which are to be dismissed and all other uncharged related criminal activity.

      b. The United States may use the Federal Debt Collection Procedures Act and any other remedies provided by law to enforce any restitution order that may be entered as part of the sentence in this case and to collect any fine.

      c. The defendant will fully and truthfully disclose all assets and property in which she has any interest, or over which the defendant exercises control directly or indirectly, including assets and property held by a spouse, nominee or other third party. The defendant's disclosure obligations are ongoing, and are in force from the execution of this agreement until the defendant has satisfied the restitution order in full.

      d. Within 10 days of the execution of this plea agreement, at the request of the United States Attorney's Office (USAO), the defendant agrees to execute

-17-

and submit (1) a Tax Information Authorization form; (2) an Authorization to Release Information; (3) a completed financial disclosure statement; and (4) copies of all financial information that the defendant submits to the U.S. Probation Office.  The defendant understands that compliance with these requests will be taken into account when the United States makes a recommendation to the Court regarding the defendant's acceptance of responsibility.

e.  At the request of the USAO, the defendant agrees to undergo any polygraph examination the United States might choose to administer concerning the identification and recovery of substitute assets and restitution.

f.  The defendant hereby authorizes the USAO to obtain a credit report pertaining to her to assist the USAO in evaluating the defendant's ability to satisfy any financial obligations imposed as part of the sentence.

g.  The defendant understands that a Special Assessment will be imposed as part of the sentence in this case.  The defendant promises to pay the Special Assessment of $100 by submitting a satisfactory form of payment to the Clerk of the Court prior to appearing for the sentencing proceeding in this case.  The defendant agrees to provide the Clerk's receipt as evidence of her fulfillment of this obligation at the time of sentencing.

h.  The defendant certifies that she has made no transfer of assets or property for the purpose of (1) evading financial obligations created by this Agreement; (2) evading obligations that may be imposed by the Court; nor (3) hindering efforts of the USAO to enforce such financial obligations.  Moreover, the defendant promises that she will make no such transfers in the future.

i.  In the event the United States learns of any misrepresentation in the financial disclosure statement, or of any asset in which the defendant had an interest at the time of this plea agreement that is not disclosed in the financial disclosure statement, and in the event such misrepresentation or nondisclosure changes the estimated net worth of the defendant by ten thousand dollars ($10,000) or more, the United States may at its option: (1) choose to be relieved of its obligations under this plea agreement; or (2) let the plea agreement stand, collect the full forfeiture, restitution, and fines imposed by any criminal or civil judgment, and also collect 100% (one hundred percent) of the value of any previously undisclosed assets.  The defendant agrees not to contest any collection of such assets.  In the event the United States opts to be relieved of its obligations under this plea agreement, the defendant's previously entered pleas of guilty shall remain in effect and cannot be withdrawn.

j.  If the Court orders the defendant to pay restitution to the IRS for the failure to pay tax, either directly as part of the sentence or as a condition of

-18-

supervised release, the IRS will use the restitution order as the basis for a civil assessment. *See* 26 U.S.C. § 6201(a)(4). The defendant does not have the right to challenge the amount of this assessment. *See* 26 U.S.C. § 6201(a)(4)(C). Neither the existence of a restitution payment schedule nor the defendant's timely payment of restitution according to that schedule will preclude the IRS from administrative collection of the restitution-based assessment, including levy and distraint under 26 U.S.C. § 6331.

17. **Government's Reservation of Rights.** The defendant understands that the

United States expressly reserves the right in this case to:

  a. oppose or take issue with any position advanced by defendant at the sentencing hearing which might be inconsistent with the provisions of this plea agreement;

  b. comment on the evidence supporting the charges in the Indictment;

  c. oppose any arguments and requests for relief the defendant might advance on an appeal from the sentences imposed and that the United States remains free on appeal or collateral proceedings to defend the legality and propriety of the sentence actually imposed, even if the Court chooses not to follow any recommendation made by the United States; and

  d. oppose any post-conviction motions for reduction of sentence, or other relief.

18. **Waiver of Constitutional Rights.** The defendant, by pleading guilty,

acknowledges that she has been advised of, understands, and knowingly and voluntarily waives

the following rights:

  a. the right to plead not guilty and to persist in a plea of not guilty;

  b. the right to be presumed innocent until her guilt has been established beyond a reasonable doubt at trial;

  c. the right to a jury trial, and at that trial, the right to the effective assistance of counsel;

  d. the right to confront and cross-examine the witnesses who testify against her;

-19-

e.  the right to compel or subpoena witnesses to appear on her behalf; and

f.  the right to remain silent at trial, in which case her silence may not be used against her.

The defendant understands that by pleading guilty, she waives or gives up those rights and that there will be no trial.  The defendant further understands that if she pleads guilty, the Court may ask her questions about the offense or offenses to which she pleaded guilty, and if the defendant answers those questions under oath and in the presence of counsel, her answers may later be used against her in a prosecution for perjury or making a false statement.  The defendant also understands she has pleaded guilty to a felony offense and, as a result, will lose her right to possess a firearm or ammunition and might be deprived of other rights, such as the right to vote or register to vote, hold public office, or serve on a jury.  She further understands that by pleading guilty to an indictment, she expressly consents to venue in the Western District of Missouri, and she waives her right to subsequently challenge venue and jurisdiction in that court to the charges to which she pleads.

19.  **Waiver of Appellate and Post-Conviction Rights.**

a.  The defendant acknowledges, understands and agrees that by pleading guilty pursuant to this plea agreement she waives her right to appeal or collaterally attack a finding of guilt following the acceptance of this plea agreement, except on grounds of (1) ineffective assistance of counsel; or (2) prosecutorial misconduct.

b.  The defendant expressly waives her right to appeal her sentence, directly or collaterally, on any ground except claims of (1) ineffective assistance of counsel; (2) prosecutorial misconduct; or (3) an illegal sentence.  An "illegal sentence" includes a sentence imposed in excess of the statutory maximum, but does *not* include less serious sentencing errors, such as a misapplication of the Sentencing Guidelines, an abuse of discretion, or the imposition of an unreasonable sentence.  However, if the United States exercises its right to appeal the sentence imposed as authorized by 18 U.S.C. § 3742(b), the defendant is released from this waiver and may, as part of the Government's appeal, cross-

-20-

appeal her sentence as authorized by 18 U.S.C. § 3742(a) with respect to any issues that have not been stipulated to or agreed upon in this agreement.

20. **Waiver of FOIA Request.** The defendant waives all of her rights, whether asserted directly or by a representative, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case including, without limitation, any records that may be sought under the Freedom of Information Act, 5 U.S.C. § 552, or the Privacy Act of 1974, 5 U.S.C. § 552a.

21. **Waiver of Claim for Attorney's Fees.** The defendant waives all of her claims under the Hyde Amendment, 18 U.S.C. § 3006A, for attorney's fees and other litigation expenses arising out of the investigation or prosecution of this matter.

22. **Defendant's Breach of Plea Agreement.** If the defendant commits any crimes, violates any conditions of release, or violates any term of this plea agreement between the signing of this plea agreement and the date of sentencing, or fails to appear for sentencing, or if the defendant provides information to the Probation Office or the Court that is intentionally misleading, incomplete, or untruthful, or otherwise breaches this plea agreement, the United States will be released from its obligations under this agreement. The defendant, however, will remain bound by the terms of the agreement, and will not be allowed to withdraw her plea of guilty.

The defendant also understands and agrees that in the event she violates this plea agreement, all statements made by her to law enforcement agents subsequent to the execution of this plea agreement, any testimony given by her before a grand jury or any tribunal or any leads from such statements or testimony shall be admissible against her in any and all criminal proceedings. The defendant waives any rights that she might assert under the United States Constitution, any statute, Rule 11(f) of the Federal Rules of Criminal Procedure, Rule 410 of the

-21-

Federal Rules of Evidence, or any other federal rule that pertains to the admissibility of any statements made by her subsequent to this plea agreement.

23. **Defendant's Representations.** The defendant acknowledges that she has entered into this plea agreement freely and voluntarily after receiving the effective assistance, advice and approval of counsel. The defendant acknowledges that she is satisfied with the assistance of counsel, and that counsel has fully advised her of her rights and obligations in connection with this plea agreement. The defendant further acknowledges that no threats or promises, other than the promises contained in this plea agreement, have been made by the United States, the Court, her attorneys or any other party to induce her to enter her plea of guilty.

24. **No Undisclosed Terms.** The United States and defendant acknowledge and agree that the above-stated terms and conditions, together with any written supplemental agreement that might be presented to the Court in camera, constitute the entire plea agreement between the parties, and that any other terms and conditions not expressly set forth in this agreement or any written supplemental agreement do not constitute any part of the parties' agreement and will not be enforceable against either party.

25. **Standard of Interpretation.** The parties agree that, unless the constitutional implications inherent in plea agreements require otherwise, this plea agreement should be interpreted according to general contract principles and the words employed are to be given their normal and ordinary meanings. The parties further agree that, in interpreting this agreement, any

drafting errors or ambiguities are not to be automatically construed against either party, whether or not that party was involved in drafting or modifying this agreement.

David M. Ketchmark
Acting United States Attorney


Dated:   8/3/12          **/s/ Daniel M. Nelson**
Daniel M. Nelson
Assistant United States Attorney


Dated:   8/7/12          **/s/ Thomas M. Larson**
Thomas M. Larson
Assistant United States Attorney


I have consulted with my attorney and fully understand all of my rights with respect to the offenses charged in the Indictment.  Further, I have consulted with my attorney and fully understand my rights with respect to the provisions of the Sentencing Guidelines.  I have read this plea agreement and carefully reviewed every part of it with my attorney.  I understand this plea agreement and I voluntarily agree to it.


Dated:   8/7/12          **/s/ Karen Olson**
Karen Olson
Defendant


I am defendant Karen Olson's attorney.  I have fully explained to her her rights with respect to the offenses charged in the Indictment.  Further, I have reviewed with her the provisions of the Sentencing Guidelines which might apply in this case.  I have carefully reviewed every part of this plea agreement with her.  To my knowledge, Karen Olson's decision to enter into this plea agreement is an informed and voluntary one.


Dated:   8/7/12          **/s/ P.J. O'Connor**
P.J. O'Connor
Attorney for Defendant